## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

DANA MCALLISTER,

              Plaintiff,

v.

SHANNON BRZAK, N.P., et al

              Defendants.

Case No: 2:25-cv-11965
District Judge: Mark A. Goldsmith
Magistrate Judge: Kimberly G. Altman

---

DANA MCALLISTER
*In Pro Per*
607 Shelby Street, #749
Detroit, MI 48226
(248) 977-6505
dmcallisteroakcty@gmail.com

MERRY, FARNEN & RYAN, P.C.
Michael T. Ryan (P53634)
*Attorney for Frankenmuth Insurance*
300 Maple Park Blvd., Suite 301
St. Clair Shores, MI 48081
(586) 776-5927
mryan@mfr-law.com

CHAPMAN LAW GROUP
Nicholas B. Pillow (P83927)
*Attorney for CoreMed Plus Defendants*
1441 West Long Lake Rd., Suite 310
Troy, MI 48098
(248) 644-6326
npillow@chapmanlawgroup.com

---

## COREMED PLUS DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(1) AND (6)

NOW COME Defendants MERNA JARBO, D.O., MAAN EKKAH, M.D., and MAAN EKKAH, M.D., P.C., d/b/a COREMED PLUS, ("CoreMed Plus

1

Defendants") by and through their attorneys, CHAPMAN LAW GROUP, and for their Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and (6) states as follows:

1.      On March 18, 2025, Plaintiff Dana McAllister filed a small claims complaint against NP Brzak based on the same operative facts that form the basis of the present action.

2.      On March 28, 2025, Defendant Brzak removed to the general civil division of the district court, with an official order of removal being entered on or about April 3, 2025.

3.      On April 9, 2025, Plaintiff filed an amended complaint in the district Court action, adding three additional claims for General Negligence, Promissory Estoppel, and Fraud. (**Exhibit A – April 9, 2025 District Court Complaint).** Plaintiff's amended Michigan District Court Complaint was based on the same set of operative facts as the present case. (**See ECF No. 1**).

4.      On April 21, 2025, NP Brzak, having not been properly served with Plaintiff's amended District Court Complaint, filed her Motion to Dismiss Plaintiff's original small claims court Complaint. (**Exhibit B – Michigan District Court Motion for Summary Disposition**).

5.      On May 12, 2025, Defendant Brzak filed her reply brief in the Michigan District Court matter, specifically addressing the amended claims of Breach of

Contract, Promissory Estoppel, General Negligence, and Fraud. (**Exhibit C –** **Michigan District Court Reply Brief**).

6.　　On May 20, 2025, the Honorable Lisa L. Asadoorian held oral arguments of Defendant Brzak's MSD, finding on the record that the there was no genuine issue of material fact that Plaintiff's claims for Breach of Contract, Promissory Estoppel, and Fraud lacked any legal support, and that Plaintiff's general negligence claims properly sounded in medical malpractice. (**Exhibit D – Michigan** **District Court Order**). Accordingly, the Michigan 52-3 District Court dismissed Plaintiff's claims with prejudice. (***Id.***).

7.　　Meanwhile, on May 13, 2025, Plaintiff filed her complaint in the Sixth Judicial Circuit for the County of Oakland, MI, raising the same causes of action as outlined in her Michigan District Court complaint, but adding additional Defendants Imad Mansoor, M.D., Maan Ekkah, M.D., Merna Jarbo, D.O., and Maan Ekkah, M.D., P.C. (**Exhibit E – Plaintiff's Oakland County Circuit Court Complaint**).

8.　　In light of the identical nature of the Oakland County Circuit Court claims to the 52-3 District Court claims, on May 30, 2025, CoreMed Plus Defendants filed their Motion for Summary Disposition pursuant to MCR 2.116(C)(6), (7), (8), and (10). (**Exhibit F – CoreMed Plus' Oakland County Circuit Court MSD**).

9.　　Since filing her state circuit Court action, Plaintiff has engaged in a series of discovery and service abuses intended to harass CoreMed Plus Defendants

3

and their counsel, and to drive up the cost of litigations, with the goal of forcing an unreasonable and meritless settlement from CoreMed Plus Defendants.

10.   As a result of Plaintiff's continued harassing behavior, on June 13, 2025, CoreMed Plus Defendants sought an emergency protective order from the Oakland County Circuit Court, (**Exhibit G – CoreMed Plus' Motion for Protective Order**), which was granted on June 26, 2025. (**Exhibit H – June 26, 2025 Protective Order.**).

11.   In violation of the Oakland County Circuit Court's Order, on June 30, 2025, Plaintiff, utilizing discovery information from the Oakland County Circuit Court proceedings, initiated the present suit, based on the same nucleus of operative facts. (**ECF No. 1**).

12.   Since June 1, 2025, Plaintiff has filed a total of eleven (11) motions with Oakland County Circuit Court, which have been summarily denied. (**Exhibit I – Oakland County Circuit Court Docket**).

13.   In addition to her eleven (11) motions in state circuit court, Plaintiff is also 1) pursing the present federal action based on the same nucleus of operative facts, 2) seeking appeal to the Oakland County Circuit Court of the Michigan District Court's decision on her prior suit on these same facts, *Oakland County Circuit Court Case No. 2025-215880-AV*; 3) seeking an interlocutory appeal of the Oakland County Court's June 26, 2025 protective order, *MI Court of appeals Docket No.*

*376217*; and 4) filed a lawsuit against Defense Counsel based on their representation of CoreMed Plus Defendants in this series of matters, *Oakland County Circuit Court Case No. 2025-215949-NO*.

14. Plaintiff's actions in pursuing serial litigation and bombarding the Courts and Defendants with serial motions on the same issues is not only vexatious, but also nothing short of an abuse of process.

15. As it stands, Plaintiff's repeated fillings require more time and attention to continue responding to than the remainder of the undersigned counsel's entire case load combined[1]. Even among pro se plaintiffs, Plaintiff in this matter ranks among the most prolific filers the undersigned has opposed as defense counsel[2].

16. Upon information and belief, such serial litigation tactics are a common practice or *modus operandi* for this Plaintiff. By way of example, attached as **Exhibit J**, to this response is a Motion to Enforce Settlement filed by USAA, in *E.D. MI Case No. 2:25-cv-10391, ECF No. 87*. As the Motion and its attachments indicate, Plaintiff had initiated "five lawsuits between Plaintiff and USAA, some of its affiliate organizations, its former CEO, and some USAA employees and agents" all based on the same May 13, 2024 motor vehicle accident that forms the basis of the present suit. (**Ex. J at p. 5, PageID.82**).

---

[1] The undersigned counsel asserts that his current case load consists of a total of seventy (70) cases.
[2] The undersigned counsel manages Chapman Law Group's pro se litigations program and currently has roughly thirty-five (35) cases involving a pro se plaintiff.

17.    Additionally, looking only at the Oakland County Court explorer, Plaintiff has filed a total of thirty-six (36) lawsuits with this Honorable Court since 2013[3]. (**Exhibit K – Oakland County Register of Actions for Dana McAllister**). That count does not include any state district Court or federal lawsuits she has filed.

18.    Based upon Plaintiff's history of serial litigation, it is CoreMed Plus Defendants' sincere belief that the entire purpose of Plaintiff's continued barrage of ungrounded filings based on the same repeated issues is to harass Defendants and drive up the cost of litigation with the intent of inducing a settlement in bad faith.

19.    By way of example, on July 22, 2025, Plaintiff made a bad faith "settlement" offer to dismiss all of her pending lawsuits for $10,000. Such offer was based solely on Plaintiff's serial litigation and is consistent with Plaintiff's M.O. for her serial litigation. (**Exhibit L – July 22, 2025 Bad Faith Settlement Offer**).

20.    "Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). Unless otherwise provided by statute, federal subject matter jurisdiction requires either that 1) an action "aris[e] under the Constitution, laws, or treaties of the United States," see 28 U.S.C. § 1331; or 2) that a complete diversity of citizenship exist between the parties with an amount in controversy exceeding $75,000. *See* 28 U.S.C. § 1332.

---

[3] Plaintiff has filed half of those lawsuits, eighteen (18), since 2023.  (**See Ex. K**).

21.     "[W]hen subject matter jurisdiction is challenged, the plaintiff has the burden of proving jurisdiction in order to survive the motion to dismiss." *Giesse v. Secretary of Department of Health and Human Services*, 522 F.3d 697, 702 (6th Cir. 2008). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

22.     Here, as discussed in Co-Defendant Frankenmuth Insurance's Motion to Dismiss, (**ECF No. 9**), this Honorable Court lacks subject matter jurisdiction over Plaintiff's allegations in this matter because Congress did not explicitly create a private right of action under any of the statutes which Plaintiff alleges from the legal basis for the above captioned matter. *See Touche Ross & Co. v. Redington,* 442 U.S. 560, 568 (1979); *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001).

23.     It is well-established under the holdings of *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (2009) (quoting T*wombly*, 550 U.S. at 570 (2007)). "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the Complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id*. at 679.

7

24. Under *Twombly* and *Iqbal*, it is no longer enough for Plaintiffs to promise that they will be able to come up with the facts to support a claim following discovery. *See New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1051 (6th Cir. 2011); *Patterson v. Novartis Pharmaceuticals Corp.*, 451 F. App'x 495, 499 (6th Cir. 2011); *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 573 (6th Cir. 2008). Fed. R. Civ. P. 8 does not allow a plaintiff who has nothing but legal conclusions to file a complaint devoid of facts and then conduct discovery to locate support. *See Iqbal*, 556 U.S. at 678-79. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Twombly*, 550 U.S. at 556

25. Here, as more fully outlined in the accompanying brief, even taking all of the facts alleged in Plaintiff's complaint as true, Plaintiff still fails to state a valid claim against each individual Defendant that is plausible on its face.

26. Based on the blatant frivolous nature of Plaintiff's claims and her unbridled abuse of judicial process, CoreMed Plus Defendants assert that they are entitled to the award of reasonable attorney's fees and costs incurred in defending Plaintiff's serial litigation, not only before this Court, but in all cases arising out of the same nucleus of operative facts. *See Wesco Ins. Co. v. Reberick Linton Belfance, LLP*, 39 F. 4th 326, 337 (6th Cir. 2022) ("In the second bucket, some sources permit

one party to obtain attorney's fees if the other party (or that party's attorney) has engaged in litigation misconduct.").

27.    Federal law specifically provides for attorney's fees wrongfully incurred to be assessed against a party or attorney that unreasonably and vexatiously drives up the costs of litigation or engages in other abuses of the litigation process. See Fed. R. Civ. P. 11; 28 U.S.C. § 1927.

28.    Here, as more fully outlined in the accompanying brief, there can be no question that Plaintiff has engaged in an ongoing abuse of process through serial litigation and filings, which have no reasonable basis in law or fact, and which is specifically designed to harass CoreMed Plus Defendants and induce settlement based solely on the wish to avoid further harassment from Plaintiff.

29.    Since the ruling of the 52-3 District Court on May 20, 2025, (**Ex. D**), CoreMed Plus Defendants have wrongfully incurred 35.4 hours of work by the undersigned counsel, costing $10,620[4].

WHEREFORE, Defendants MERNA JARBO, D.O., MAAN EKKAH, M.D., and MAAN EKKAH, M.D., P.C., d/b/a COREMED PLUS, respectfully request this Honorable Court Grant this Motion to Dismiss, dismiss all claims with prejudice,

---

[4] CoreMed Plus Defendants assert that this number is generous as it only included the active litigation cost billed by the undersigned counsel and does not include time necessarily spent by Senior counsel pertaining to this case which is in excess of 10 hours and an additional $5,000.

enter judgment in their favor, award them costs wrongfully incurred in defending

Plaintiff's claims, and grant such other relief as the Court deems just and equitable.

Respectfully Submitted,
CHAPMAN LAW GROUP

Dated: December 23, 2025

*/s/ Nicholas B. Pillow*
Nicholas B. Pillow (P83927)
Attorney for CoreMed Plus Defendants
1441 West Long Lake Rd., Suite 310
Troy, MI 48098
(248) 644-6326
npillow@chapmanlawgroup.com

10

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN**

DANA MCALLISTER,

                                                Case No: 2:25-cv-11965

        Plaintiff,                      District Judge: Mark A. Goldsmith

                                  Magistrate Judge: Kimberly G. Altman

v.

SHANNON BRZAK, N.P., et al

        Defendants.

---

DANA MCALLISTER | CHAPMAN LAW GROUP
*In Pro Per* | Nicholas B. Pillow (P83927)
607 Shelby Street, #749 | *Attorney for CoreMed Plus Defendants*
Detroit, MI 48226 | 1441 West Long Lake Rd., Suite 310
(248) 977-6505 | Troy, MI 48098
dmcallisteroakcty@gmail.com | (248) 644-6326
| npillow@chapmanlawgroup.com

MERRY, FARNEN & RYAN, P.C.
Michael T. Ryan (P53634)
*Attorney for Frankenmuth Insurance*
300 Maple Park Blvd., Suite 301
St. Clair Shores, MI 48081
(586) 776-5927
mryan@mfr-law.com

---

**BRIEF IN SUPPORT OF COREMED DEFENDANTS' MOTION TO
DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(1) AND (6)**


**CERTIFICATE OF SERVICE**

i

## TABLE OF CONTENTS

INDEX OF AUTHORITIES ............................................................................... iii

INDEX OF EXHIBITS ..................................................................................... iv

STATEMENT OF ISSUES PRESENTED .............................................................v

CONTROLLING/APPROPRIATE AUTHORITY FOR RELIEF SOUGHT ........ vi

I.      STATEMENT OF FACTS ....................................................................1

II.     PROCEDURAL BACKGROUND ........................................................3

III.    STANDARD OF REVIEW ...................................................................6

IV.     ARGUMENT ........................................................................................8

    A.   The Court lacks subject matter jurisdiction of Plaintiff's claims ...................8

    B.   Plaintiff's Count I fails to state a valid claim upon which relief can be granted ........................................................................................................8

    C.   Count II fails to state a valid claim...............................................................11

    D.   Plaintiff fails to state a valid claim for violation of HIPAA and the 21st Century Cures Act ......................................................................................12

    E.   CoreMed Plus Defendants are entitled to Attorney's fees and costs wrongfully incurred in Defending Plaintiff's series of frivolous litigation .........13

# INDEX OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)..................................................................6

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)....................................................6

*Giesse v. Secretary of Department of Health and Human Services*, 522 F.3d 697
  (6th Cir. 2008)........................................................................................................7

*Grindstaff v. Green*, 133 F.3d 416 (6th Cir. 1998) ..................................................6

*Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375 (1994) ................6, 7

*Makarova v. United States*, 201 F.3d 110 (2d Cir. 2000)..........................................8

*McAllister v. Long*, 2025 WL 595156 (E.D. Mich. Feb. 24, 2025).....................8, 16

*Song v. City of Elyria, Ohio*, 985 F.2d 840 (6th Cir. 1993)......................................6

**Statutes**

28 U.S.C. § 1331 .....................................................................................................6, 7

28 U.S.C. § 1332 .....................................................................................................6, 7

28 U.S.C. § 4101 ........................................................................................................8

42 U.S.C. § 1981 ......................................................................................................11

**Rules**

Fed. R. Civ. P. 8.......................................................................................................8, 7

Fed. R. Civ. P. 10........................................................................................................8

Fed. R. Civ. P. 12(b)(1).........................................................................................2, 8

iii

## INDEX OF EXHIBITS

**EXHIBIT A**          April 9, 2025 District Court Complaint

**EXHIBIT B**          Michigan District Court Motion for Summary Disposition

**EXHIBIT C**          Michigan District Court Reply Brief

**EXHIBIT D**          Michigan District Court Order

**EXHIBIT E**          Plaintiff's Oakland County Circuit Court Complaint

**EXHIBIT F**          CoreMed Plus' Oakland County Circuit Court MSD

**EXHIBIT G**          CoreMed Plus' Motion for Protective Order

**EXHIBIT H**          June 26, 2025 Protective Order

**EXHIBIT I**          Oakland County Circuit Court Docket

**EXHIBIT J**          USAA's Motion to Enforce Settlement

**EXHIBIT K**          Oakland County Register of Actions for Dana McAllister

**EXHIBIT L**          Bad Faith Settlement Offer

## STATEMENT OF ISSUES PRESENTED

SHOULD THE COURT DISMISS PLAINTIFF'S CLAIMS AGAINST DEFENDANT BRZAK FOR FAILURE TO STATE A VALID CLAIM UNDER FED. R. CIV. P. 12(b)(6)?

Defendants Answer:                                                     YES.
Plaintiff Answers:                                                     NO.

SHOULD THE COURT DISMISS PLAINTIFF'S CLAIMS AGAINST DEFENDANT BRZAK FOR LACK OF SUBJECT MATTER JURISDICTION UNDER FED. R. CIV. P. 12(b)(1)?

Defendants Answer:                                                     YES.
Plaintiff Answers:                                                     NO.

SHOULD THE COURT AWARD DEFENDANT BRZAK REASONABLE ATTORNEY'S FEES INCURRED AS A RESULT OF PLAINTIFF'S PURSUIT OF THIS FRIVOLOUS LAWSUIT?

Defendants Answer:                                                     YES.
Plaintiff Answers:                                                     NO.

v

## CONTROLLING/APPROPRIATE AUTHORITY FOR RELIEF SOUGHT

A court may decide a motion to dismiss on the basis of the pleadings alone. *Song v. City of Elyria, Ohio*, 985 F.2d 840, 842 (6th Cir. 1993). In considering such a motion, the court need not accept plaintiff's legal conclusions or "**unwarranted factual inferences**." *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998) (emphasis added). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Under *Twombly* and *Iqbal*, a plaintiff must assert sufficient factual allegations to support a plausible right to relief. *New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1051 (6th Cir. 2011) (confirming that a plaintiff is not entitled to discovery absent a sufficiently plead complaint.); *Patterson v. Novartis Pharmaceuticals Corp.*, 451 F. App'x 495, 499 (6th Cir. 2011); *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 573 (6th Cir. 2008). Fed. R. Civ. P. 8 does not allow a plaintiff who has nothing but legal conclusions to file a complaint devoid of facts and then conduct discovery to locate support. *See Iqbal*, 556 U.S. at 678-79. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Twombly*, 550 U.S. at 556. "Where the well-pleaded facts do not permit the court to infer more than the

vi

**mere possibility of misconduct**, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (emphasis added).

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). Unless otherwise provided by statute, federal subject matter jurisdiction requires either that 1) an action "aris[e] under the Constitution, laws, or treaties of the United States," see 28 U.S.C. § 1331; or 2) that a complete diversity of citizenship exist between the parties with an amount in controversy exceeding $75,000. see 28 U.S.C. § 1332. "[W]hen subject matter jurisdiction is challenged, the plaintiff has the burden of proving jurisdiction in order to survive the motion to dismiss." *Giesse v. Secretary of Department of Health and Human Services*, 522 F.3d 697, 702 (6th Cir. 2008). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

## I.   STATEMENT OF FACTS

On or about May 16, 2024, Plaintiff saw Dr. Mansoor, a physician employed by CoreMed Plus, related to complaints of back pain following a recent motor vehicle accident. Thereafter, Plaintiff's care was primarily managed by NP Brzak. until she was fired as a patient of the practice on or about March 11, 2025.

During the course of her treatment, NP Brzak determined that Plaintiff was limited in her ability to drive over 30 minutes at a time, and had trouble completing household tasks including cooking, cleaning, and any activities that required excessive twisting, bending, or lifting. This medical opinion was provided to Plaintiff's auto insurance carrier, USAA, in multiple letters throughout Plaintiff's treatment with CoreMed Plus. The latest letter from NP Brzak specifically stated:

Date: 02/14/2025
RE: Dana McAllister, DOB: ▉▉▉▉▉▉▉▉▉▉▉

To Whom it May Concern,

I saw Dana McAllister in the office today 2/14/25. At this time, we discussed her current plan of care. Ms. McAllister was initially evaluated in our office on 5/16/2024 for injuries following a Motor Vehicle Accident. After this visit, Ms. McAllister has been seen in our office on 5/30/2024, 6/17/2024, 6/27/2024, 7/26/2024, 9/5/2024, 9/19/2024, 10/9/2024, and 12/13/2024.

During these visits, she is being evaluated for symptoms that have occurred following MVA. During these visits, Ms. McAllister has expressed that completing household tasks, including cooking and cleaning, and driving > 30 minutes have caused an exacerbation of her symptoms.

For treatment of injuries, Ms. McAllister has been referred to specialist physicians for treatment. She will continue to follow with our office on a monthly basis.

Please feel free to reach out to our office should you have any questions or concerns at (248)454-1004.

Sincerely,

*Shannon Brzak, FNP-BC*

Electronically Signed by: SHANNON BRZAK, NP

1

Following the February 14, 2025 visit with NP Brzak, Plaintiff had one final appointment with the practice on or about February 21, 2025 wherein she was seen by Dr. Ekkah. Following that appointment, Dr. Ekkah wrote the following letter, which is substantively identical to the letter authored by NP Brzak:

Date: 02/21/2025
RE: Dana McAllister, DOB:

To Whom it May Concern,

I saw Dana McAllister in the office today 2/21/25.  At this time, we discussed her current plan of care.

During this visit, she is being evaluated for symptoms that have been ongoing following MVA. Ms. McAllister has expressed that completing household tasks such as cooking and cleaning, and driving > 30 minutes have caused an exacerbation of her symptoms. Ms. McAllister will not be able to drive over 30 minutes. She will  continue to have restrictions on household tasks including cooking, cleaning, laundry, and movements such as bending and twisting, which causes muscle spasms and back pain.

Ms. McAllister was initially evaluated in our office on 5/16/2024 for injuries following a Motor Vehicle Accident.  After this visit, Ms. McAllister has been seen in our office on 5/30/2024, 6/17/2024, 6/27/2024, 7/26/2024, 9/5/2024, 9/19/2024, 10/9/2024, and 12/13/2024. Her next office visit with us is on 03/21/2025.

For treatment of injuries, Ms. McAllister has been referred to specialist physicians for treatment.  She will continue to follow with our office on a monthly basis.  She will follow up in the office with Dr. Ekkah on March 17, 2025.

Please feel free to reach out to our office should you have any questions or concerns at (248)454-1004.

Sincerely,

Electronically Signed by: MAAN EKKAH, MD

Unfortunately, for reasons unknown to CoreMed Plus Defendants, Plaintiff's insurance carrier apparently determined that it was only going to pay for a small portion of Plaintiff's wage loss and household services benefits. In response, Plaintiff began her present harassing behavior of CoreMed Plus and its employees, particularly NP Brzak, demanding that NP Brzak alter her medical opinions to allow Plaintiff to receive wage loss and household services benefits from USAA. CoreMed Plus and NP Brzak refused to acquiesce to Plaintiff's demands leading to continued

2

erratic and threatening behavior. As a result, on or about March 11, 2025, CoreMed

Plus sent Plaintiff the following letter informing her that she was being terminated

as a patient of the practice:



COREMED PLUS / MAAN EKKAH MD PC

Dana,

I hope you are doing well. We are reaching out to inform you that we are unable to continue your care at CoreMed Plus offices. After multiple attempts on your part to contact our providers, as well as efforts to alter reports for financial gain and threats of legal action against our staff and providers, we have made the decision to discontinue your care.

We wish you the best

Sincerely,

CoreMed Plus

The present series of litigation was initiated by Plaintiff shortly thereafter.

## II.  PROCEDURAL BACKGROUND

On March 18, 2025, Plaintiff Dana McAllister filed a small claims complaint

against NP Brzak based on the same operative facts that form the basis of the present

action. On March 28, 2025, Defendant Brzak removed to the general civil division

of the district court, with an official order of removal being entered on or about April

3, 2025.

On April 9, 2025, Plaintiff filed an amended complaint in the district Court

action, adding three additional claims for General Negligence, Promissory Estoppel,

3

and Fraud. (**Exhibit A – April 9, 2025 District Court Complaint**). Plaintiff's amended Michigan District Court Complaint was based on the same set of operative facts as the present case. (**See ECF No. 1**). On April 21, 2025, NP Brzak, having not been properly served with Plaintiff's amended District Court Complaint, filed her Motion to Dismiss Plaintiff's original small claims court Complaint. (**Exhibit B – Michigan District Court Motion for Summary Disposition**).

On May 12, 2025, Defendant Brzak filed her reply brief in the Michigan District Court matter, specifically addressing the amended claims of Breach of Contract, Promissory Estoppel, General Negligence, and Fraud. (**Exhibit C – Michigan District Court Reply Brief**). On May 20, 2025, the Honorable Lisa L. Asadoorian held oral arguments of Defendant Brzak's MSD, finding on the record that the there was no genuine issue of material fact that Plaintiff's claims for Breach of Contract, Promissory Estoppel, and Fraud lacked any legal support, and that Plaintiff's general negligence claims properly sounded in medical malpractice. (**Exhibit D – Michigan District Court Order**). Accordingly, the Michigan 52-3 District Court dismissed Plaintiff's claims with prejudice. (***Id.***).

Meanwhile, on May 13, 2025, Plaintiff filed her complaint in the Sixth Judicial Circuit for the County of Oakland, Michigan, raising the same causes of action as outlined in her Michigan District Court complaint, but adding additional Defendants Imad Mansoor, M.D., Maan Ekkah, M.D., Merna Jarbo, D.O., and Maan

4

Ekkah, M.D., P.C. (**Exhibit E – Plaintiff's Oakland County Circuit Court Complaint**). In light of the identical nature of the Oakland County Circuit Court claims to the 52-3 District Court claims, on May 30, 2025, CoreMed Plus Defendants filed their Motion for Summary Disposition pursuant to MCR 2.116(C)(6), (7), (8), and (10). (**Exhibit F – CoreMed Plus Defendants' Oakland County Circuit Court MSD**).

Since filing her state circuit Court action, Plaintiff has engaged in a series of discovery and service abuses intended to harass CoreMed Plus Defendants and their counsel and to drive up the cost of litigations, with the goal of forcing an unreasonable and meritless settlement from CoreMed Plus Defendants. As a result of Plaintiff's continued harassing behavior, on June 13, 2025, the CoreMed Plus Defendants sought an emergency protective order from the Oakland County Circuit Court, (**Exhibit G – CoreMed Plus' Motion for Protective Order**), which was granted on June 26, 2025. (**Exhibit H – June 26, 2025 Protective Order**).

In violation of the Oakland County Circuit Court's order, on June 30, 2025, Plaintiff, utilizing discovery information from the Oakland County Circuit Court proceedings, initiated the present suit, based on the same nucleus of operative facts. (**ECF No. 1**). Since June 1, 2025, Plaintiff has filed a total of eleven (11) motions with Oakland County Circuit Court, which have been summarily denied. (**Exhibit I – Oakland County Circuit Court Docket**). In addition to her eleven (11) motions

5

in state circuit court, Plaintiff is also 1) pursuing the present federal action based on the same nucleus of operative facts, 2) seeking appeal to the Oakland County Circuit Court of the Michigan District Court's decision on her prior suit on these same facts, *Oakland County Circuit Court Case No. 2025-215880-AV*; 3) seeking an interlocutory appeal of the Oakland County Court's June 26, 2025 protective order, *MI Court of appeals Docket No. 376217*; and 4) filed a lawsuit against Defense Counsel based on their representation of CoreMed Plus Defendants in this series of matters, *Oakland County Circuit Court Case No. 2025-215949-NO*.

### III.   **<u>STANDARD OF REVIEW</u>**

A court may decide a motion to dismiss on the basis of the pleadings alone. *Song v. City of Elyria, Ohio*, 985 F.2d 840, 842 (6th Cir. 1993). In considering such a motion, the court need not accept plaintiff's legal conclusions or "**<u>unwarranted factual inferences</u>**." *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998) (emphasis added). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Under *Twombly* and *Iqbal*, a plaintiff must assert sufficient factual allegations to support a plausible right to relief. *New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1051 (6th Cir. 2011) (confirming that a plaintiff is not entitled

6

to discovery absent a sufficiently plead complaint.); *Patterson v. Novartis Pharmaceuticals Corp.*, 451 F. App'x 495, 499 (6th Cir. 2011); *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 573 (6th Cir. 2008). Fed. R. Civ. P. 8 does not allow a plaintiff who has nothing but legal conclusions to file a complaint devoid of facts and then conduct discovery to locate support. *See Iqbal*, 556 U.S. at 678-79. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Twombly*, 550 U.S. at 556. "Where the well-pleaded facts do not permit the court to infer more than the **mere possibility of misconduct**, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (emphasis added).

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). Unless otherwise provided by statute, federal subject matter jurisdiction requires either that 1) an action "aris[e] under the Constitution, laws, or treaties of the United States," see 28 U.S.C. § 1331; or 2) that a complete diversity of citizenship exist between the parties with an amount in controversy exceeding $75,000. see 28 U.S.C. § 1332. "[W]hen subject matter jurisdiction is challenged, the plaintiff has the burden of proving jurisdiction in order to survive the motion to dismiss." *Giesse v. Secretary of Department of Health and Human Services*, 522 F.3d 697, 702 (6th Cir. 2008). "A case is properly dismissed for

7

lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

### IV.     ARGUMENT

A. <u>The Court lacks subject matter jurisdiction of Plaintiff's claims</u>.

For the sake of brevity and judicial economy, CoreMed Plus Defendants, pursuant to Fed. R. Civ. P. 10, hereby incorporate and adopt on the points of fact and law outlined in Co-Defendant Frankenmuth Ins.'s Motion to Dismiss based on Fed. R. Civ. P. 12(b)(1), as if fully restated herein. Accordingly, CoreMed Plus Defendants assert that this Honorable Court lacks subject matter jurisdiction over Plaintiff's allegations because Congress did not explicitly create a private right of action under any of the statutes which Plaintiff alleges form the legal basis for the above captioned matter. *See Touche Ross & Co. v. Redington,* 442 U.S. 560, 568 (1979); *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001).

B. <u>Plaintiff's Count I fails to state a valid claim upon which relief can be granted</u>.

Count I of Plaintiff's complaint, **PageID.5**, attempts to raise a claim of defamation pursuant to 28 U.S.C. § 4101. As an initial matter, as Plaintiff was directly informed in the case of *McAllister v. Long*, 2025 WL 595156, at *2 (E.D. Mich. Feb. 24, 2025), 28 U.S.C. § 4101 is a definitional statute applicable to foreign judgments and does not create a private federal cause of action for defamation.

8

Accordingly, to the extent Plaintiff attempts to allege a federal cause of action for defamation, such action does not exist, and Defendants are entitled to dismissal as a matter of law.

Even assuming, *arguendo*, that Plaintiff is attempting to allege a Michigan State Law claim for defamation, Plaintiff still fails to state a valid claim. To sustain a claim for defamation under Michigan law, Plaintiff must plausibly allege 1) a false or defamatory statement concerning the Plaintiff; 2) an unprivileged communication or publication of the false statement to a third party; 3) fault amounting to at least negligence on the part of the publisher; and 4) either actionability of the statement irrespective of special harm, or the existence of a special harm cause by publication. *See Smith v. Anonymous Joint Enter.* 487 Mich. 102, 113 (MI. S.Ct. 2010). Additionally, allegations of defamation must be pled with specificity. *See Sarkar v Doe*, 318 Mich. App. 156 (MI Ct. App. 2016).

Here, Plaintiff's complaint does not plausibly allege any of the required elements. First, Plaintiff fails to identify with specificity what alleged statements constitute the definition. While paragraph 49 of Plaintiff's compliant claims that Defendants wrote "online" that Plaintiff was attempting to receive financial gain, such statements cannot form the basis of a defamation claim. *See Ghanam v Does*, 303 Mich App. 522, 545-547 (MI. Ct. App. 2014) (holding that even statements which are designed to be inflammatory must be viewed in the appropriate context of

9

whether the reader would take them as fact or as the expression of opinion by the writer). Moreover, the statements that Plaintiff takes issue with, that CoreMed Plus believes she is seeking financial gain through her continued harassing behavior and requests for them to alter their medical opinions, are all assertions of opinion by CoreMed Plus based on their interactions with Plaintiff. As such, such statements are completely protected by the first amendment and cannot form the basis for a defamation claim. *See Id*. at 546. Michigan jurisprudence holds that characterizations of a legal theory are constitutionally protected opinions when based upon disclosed facts of the case. *Mouradian v Detroit News & Richard Willin,* 1997 Mich App LEXIS 3052, *2 (July 29, 1997); *Fisher v Detroit Free Press*, 158 Mich App 409, 415; 404 NW2d 765 (1987).

Second, Plaintiff does not present facts from which a reasonable person could infer that CoreMed Plus or any individually named defendant acted with the requisite fault to constitute defamation. As indicated above, the statements that Plaintiff is seeking to receive financial gain through her requests that CoreMed Plus and NP Brzak provide an altered medical opinion to USAA so she can receive financial benefits constitutes the opinions of CoreMed Plus and its employees that is based on their interactions with Plaintiff. Nothing in Plaintiff's complaint supports the conclusion that these statements were made with negligence or recklessness to the

10

truth of the matter. To the contrary, they are well grounded in fact and the actions of Plaintiff.

Finally, Plaintiff has not identified any specific damages incurred as a result of the statements. While Plaintiff broadly claims loss benefits from her insurance company these allegations are too vague and generalized to meet the pleading standard for claims of defamation. Plaintiff's complaint fails to outline with any specificity how CoreMed Plus' honest medical opinions were the cause in fact of her denial of benefits. Indeed, Plaintiff's own actions belie this assertion as Plaintiff sued USAA itself of the very same denial of benefits.

C. Count II fails to state a valid claim.

Count II of the complaint, **PageID.6-7**, Plaintiff attempts to raise a claim for discrimination in the formation of a contract under 42 U.S.C. § 1981. As an initial matter, 42 U.S.C. § 1981 is inapplicable to the above captioned matter. By its terms, 42 U.S.C. § 1981 applies only to intentional discrimination impairing the right of the Plaintiff to make and enforce contract. Here, contrary to Plaintiff's bald assertions, there is no valid contract at issue. The alleged "contract" attached as exhibit 1 to Plaintiff's complaint (**PageID.11**), is nothing more that the financial responsibility agreement Plaintiff signed as a patient when she began treating with CoreMed Plus. It is not a contract to provide any specific services or provide any specific information to USAA or any other insurer related to the care provided. It only

11

pertains to Plaintiff's acknowledgment of her financial responsibility for services rendered.

Second, Plaintiff's allegations of discrimination are based on nothing but conjecture and unwarranted factual inferences. For example, the sole basis for Plaintiff believing she was discriminated against is that her medical records from CoreMed Plus identify her race as "African American" rather than both "African American" and "Cuban American." Such speculative leaps in logic cannot plausibly form the basis for a discrimination claim.

D. <u>Plaintiff fails to state a valid claim for violation of HIPAA and the 21st Century Cures Act</u>.

Plaintiff's final claim seeks to hold CoreMed Plus Defendants Liable for alleged violations of HIPAA and the 21st Century Cures Act. (**PageID.8**). As an initial matter, Plaintiff's claims must fail as neither HIPAA nor the 21st Century Claims Act provide for a private right of action to enforce their provisions. *See Thomas v. Univ. of Tenn. Health Science Ctr at Memphis,* 2017 WL 9672523 at \*2 (6th Cir. Dec. 6, 2017); *Armstrong v. Exceptional Child Ctr., Inc.,* 575 U.S. 320, 332 (2015) ("Our precedents establish that a private right of action under federal law is not created by mere implication, but must 'unambiguously conferred[.]'").

Second, on its face, Plaintiff's complaint does not support any alleged HIPAA or 21st Century Cures Act violation. The entire basis for Plaintiff's claims is that her patient portal was deactivated when she was fired as a patient from CoreMed Plus.

12

Based on that fact, Plaintiff hollowly alleges that she was "locked out" of her medical records. Yet, neither HIPAA nor the 21st Century Cures Act require indefinite access to a patient portal after a patient has been terminated from a practice. Rather, all that is required is that the medical provider maintain the records and provides access to the records within 30 days of a reasonable request for the records. Here, Plaintiff never made a formal request for her records to be provided to her. Rather, immediately after being terminated from the practice, Plaintiff turned to the Courts and issued a subpoena for her medical records, which was painstakingly complied with by CoreMed Plus Defendants. Thus, as a matter of law, CoreMed Plus Defendants cannot be said to have plausibly violated either HIPAA or the 21st Century Cures Act.

E.  <u>CoreMed Plus Defendants are entitled to Attorney's fees and costs wrongfully incurred in Defending Plaintiff's series of frivolous litigation.</u>

Based on the blatant frivolous nature of Plaintiff's claims and her unbridled abuse of judicial process, Defendant Brzak assert that she is entitled to the award of reasonable attorney fees and costs incurred in defending Plaintiff's serial litigation, not only before this Court, but on all cases arising out of the same nucleus of operative facts. *See Wesco Ins. Co. v. Reberick Linton Belfance, LLP*, 39 F. 4th 326, 337 (6th Cir. 2022) ("In the second bucket, some sources permit one party to obtain attorney's fees if the other party (or that party's attorney) has engaged in litigation misconduct."). Federal law specifically provides for attorney's fees wrongfully

13

incurred to be assessed against a party or attorney that unreasonably and vexatiously drives up the costs of litigation or engages in other abuses of the litigation process. See Fed. R. Civ. P. 11; 28 U.S.C. § 1927.

As discussed supra, since June 1, 2025, Plaintiff has filed a total of eleven (11) motions with Oakland County Circuit Court, which have been summarily denied. (**Ex. I**). In addition to her eleven (11) motions in state circuit Court, Plaintiff is also 1) pursing the present federal action based on the same nucleus of operative facts, 2) seeking appeal to the Oakland County Circuit Court of the Michigan District Court's decision on her prior suit on these same facts, *Oakland County Circuit Court Case No. 2025-215880-AV*; 3) seeking an interlocutory appeal of the Oakland County Court's June 26, 2025 protective order, *MI Court of appeals Docket No. 376217*; and 4) filed a lawsuit against Defense Counsel based on their representation of CoreMed Plus Defendants in this series of matters, *Oakland County Circuit Court Case No. 2025-215949-NO*.

Plaintiff's actions in pursuing serial litigation and bombarding the Courts and CoreMed Plus Defendants with serial motions on the same issues is not only vexatious, but also nothing short of an abuse of process. As it stands, Plaintiff's repeated fillings require more time and attention to continue responding to than the remainder of the undersigned counsel's entire case load combined[5]. Even among pro

---

[5] The undersigned counsel asserts that his current case load consists of a total of seventy (70) cases.

14

se plaintiffs, Plaintiff in this matter ranks among the most prolific filers the undersigned has opposed as defense counsel[6].

Upon information and belief, such serial litigation tactics are a common practice or *modus operandi* for this Plaintiff. By way of example, attached as **Exhibit J**, to this response is a Motion to Enforce Settlement filed by USAA, in *E.D. MI Case No. 2:25-cv-10391, ECF No. 87*. As the Motion and its attachments indicate, Plaintiff had initiated "five lawsuits between Plaintiff and USAA, some of its affiliate organizations, its former CEO, and some USAA employees and agents" all based on the same May 13, 2024, motor vehicle accident that forms the basis of the present suit. (**Ex. J at p. 5, PageID.82**).

Additionally, looking only at the Oakland County Court explorer, Plaintiff has filed a total of thirty-six (36) lawsuits with this Honorable Court since 2013[7]. (**Ex. K** ). That count does not include any state district Court or federal lawsuits she has filed. Based upon Plaintiff's history of serial litigation, it is CoreMed Plus Defendants' sincere belief that the entire purpose of Plaintiff's continued barrage of ungrounded filings based on the same repeated issues is to harass Defendants and drive up the cost of litigation with the intent of inducing a settlement in bad faith.

---

[6] The undersigned counsel manages Chapman Law Group's pro se litigations program and currently has roughly thirty-five (35) cases involving a pro se plaintiff.
[7] Plaintiff has filed half of those lawsuits, eighteen (18), since 2023. (**See Ex. K**).

15

By way of example, on July 22, 2025, Plaintiff made a bad faith "settlement" offer to dismiss all of her pending lawsuits for $10,000. Such offer was based solely on Plaintiff's serial litigation and is consistent with Plaintiff's M.O. for her serial litigation. (**Exhibit L – July 22, 2025 Bad Faith Settlement Offer**).

Despite her status as a pro se plaintiff, Plaintiff can in no way be considered a novice to the litigation process, considering her extensive experience in pursuing litigation. Thus, any claims of naivety as to the abusive nature of her actions, or meritless basis of her claims is completely disingenuous. Plaintiff has previously been advised that such allegations as raised in this and Plaintiff's other serial litigation based on this same nucleus of operative facts have no sound basis in law. *See McAllister v. Long,* 2025 WL 595156, at *2 (E.D. Mich. Feb. 24, 2025); (**Ex. D**). Thus, Plaintiff cannot possibly point to a good faith basis for raising the present claims or for her continued abuse of the litigation process.

Since the ruling of the 52-3 District Court on May 20, 2025, (**Ex. D**), CoreMed Plus Defendants have wrongfully incurred 35.4 hours of work by the undersigned counsel, costing $10,620[8].

WHEREFORE, Defendants MERNA JARBO, D.O., MAAN EKKAH, M.D., and MAAN EKKAH, M.D., P.C., d/b/a COREMED PLUS, ("CoreMed Plus

---

[8] CoreMed Plus Defendants assert that this number is generous as it only included the active litigation cost billed by the undersigned counsel and does not include time necessarily spent by Senior counsel pertaining to this case which is in excess of 10 hours and an additional $5,000.

16

Defendants"), respectfully request this Honorable Court Grant their Motion to Dismiss, dismiss all claims against them with prejudice, enter judgment in their favor, award  costs wrongfully incurred in defending Plaintiff's claims, and grant such other relief as the Court deems just and equitable.

Respectfully Submitted,
CHAPMAN LAW GROUP

Dated: December 23, 2025

/s/ Nicholas B. Pillow
Nicholas B. Pillow (P83927)
Attorney for CoreMed Plus Defendants
1441 West Long Lake Rd., Suite 310
Troy, MI 48098
(248) 644-6326
npillow@chapmanlawgroup.com

**CERTIFICATE OF SERVICE**

I hereby certify that on December 23, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notice to all counsel of record. I further certify that a copy of this filing was served on Plaintiff by U.S. Mail at the address listed below:

Dana McAllister
607 Shelby Street, #749
Detroit, MI 48226

/s/ Stephanie Fenton
Stephanie Fenton, Legal Assistant
**On Behalf of Nicholas B. Pillow (P83927)**

17
