UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANA McALLISTER,

     Plaintiff,

v.

IMAD MANSOOR, M.D.; MAAN
EKKAH, M.D.; MERNA JARBO,
D.O.; COREMED PLUS; MAAN
EKKAH, PC; and WORLD
INSURANCE ASSOCIATES;

     Defendants.

_____/

Case No. 2:25-cv-11965
District Judge Mark A. Goldsmith
Magistrate Judge Kimberly G. Altman

**REPORT AND RECOMMENDATION TO GRANT DEFENDANTS
COREMED PLUS, MAAN EKKAH, MANN EKKAH PC AND MERNA
JARBO'S MOTION TO DISMISS (ECF No. 70), THAT EACH PARTY
BEAR THEIR OWN COSTS, AND THAT PREFILING RESTRICTIONS
BE IMPOSED ON McALLISTER
AND
TO *SUA SPONTE* DISMISS DEFENDANT WORLD INSURANCE**[1]

I.      Introduction

This is a civil case.  Plaintiff Dana McAllister, proceeding *pro se*, is suing

the above captioned defendants asserting claims under 28 U.S.C. § 4101, 42 U.S.C.

§ 1981, 42 U.S.C. § 1320d et seq. ("HIPAA"), and 42 U.S.C. § 300jj-52, the 21st

---

[1] Upon review of the parties' papers, the undersigned deems this matter appropriate for decision without oral argument.  *See* Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(1).

Century Cures Act.  As best can be gleaned from the complaint and the papers,

McAllister was in a car accident on May 13, 2024, in which she allegedly suffered

injuries and was provided medical care.  After the accident, McAllister's insurance

work loss benefits and household services were terminated, and she claims that all

of the defendants had a role in the improper termination of her benefits.  (ECF No.

1).  Under 28 U.S.C. § 636(b)(1), all pretrial matters have been referred to the

undersigned.  (ECF No. 14).

Before the Court are defendants CoreMed Plus, Maan Ekkah, Maan Ekkah

PC, and Merna Jarbo's ("CoreMed Defendants" where appropriate) motion to

dismiss.  (ECF No. 70).[2]  (ECF Nos. 9, 28).  McAllister filed a response (ECF No.

80) and defendants filed a reply (ECF No. 82).  The motion is ready for decision.

For the reasons that follow, the undersigned RECOMMENDS that

defendants' motion be GRANTED.  The undersigned further recommends that

each party bear its own costs and that prefiling restrictions be imposed on

McAllister preventing her from filing a new case in this district arising out of the

---

[2] Frankenmuth Insurance Company (FIC) and Shannon Brzak filed motions to dismiss, *see* ECF Nos. 9, 28, and McAllister failed to file responses to either motion.  The undersigned recommended the motions be granted on the merits. (ECF No. 73).  The district judge adopted that recommendation and dismissed both defendants.  (ECF No. 84).  Additionally, the undersigned has recommended that Imad Mansoor be dismissed without prejudice for failure to serve and failure to prosecute.  (ECF No. 83).  That recommendation is pending before the district judge.

auto accident without leave of court.

The undersigned also RECOMMENDS that World Insurance Associates LLC (WLA) be DISMISSED *SUA SPONTE*. As indicated in the complaint, former defendant "The Doctors Company" is a d/b/a of WLA, and The Doctors Company has been dismissed by stipulated order. (ECF No. 63). There are no separate allegations against WLA.

## II. Background[3]

### A. Allegations

McAllister says that she was involved in a three-car motor vehicle accident on May 16, 2024, resulting in injuries to her head, neck, and back. (ECF No. 1, PageID.2). As a result, she says, she contracted with Imad Mansoor, M.D.; Maan Ekkah, M.D.; Shannon Brzak, N.P.; Merna Jarbo, D.O.; and Maan Ekkah M.D., P.C., d/b/a CoreMed Plus for medical services. (*Id.*). She was initially seen by Dr. Mansoor, but after several visits was transferred to NP Brzak for care. (*Id.*). She was also treated by Dr. Jarbo and Dr. Ekkah, and on September 5, 2024, she provided CoreMed Defendants with forms relating to household services. (*Id.*). She contends that CoreMed Defendants failed to properly fill out the forms, falsely concluding that McAllister could return to work despite stated work restrictions on

---

[3] Subsections A. and B. are largely taken from the undersigned's report and recommendation at ECF No. 73.

bending, twisting, using the computer, and driving more than thirty minutes at a time. (*Id.*, PageID.2-3).

CoreMed Defendants allegedly refused to correct the false information, resulting in McAllister losing work loss benefits and reimbursement for household services from her auto insurance carrier. (*Id.*, PageID.3). McAllister continued to be treated by CoreMed Defendants through February 2025. (*Id.*). In December 2024, Dr. Jarbo opined that McAllister could work and drive because she could stretch her legs on the freeway. (*Id.*). McAllister says she attempted to stretch her legs while driving on the freeway, nearly resulting in another car accident, and Dr. Jarbo later clarified that he meant for McAllister to pull over in a rest area before stretching her legs. (*Id.*).

A neurologist opined in December 2024 that McAllister could not drive more than thirty minutes at a time due to her condition, but in January and February 2025, CoreMed Defendants continued to state that McAllister was able to work, despite the increasing intensity of her symptoms. (*Id.*).

McAllister also alleges that CoreMed Defendants repeatedly and continuously erased her Cuban and Hispanic lineage from the online portal of medical records. (*Id.*, PageID.4). She alleges mistreatment due to her African American and Cuban American background, a breach of the standard of care, and that CoreMed Defendants provided false information to her insurance company

4

and accused her of seeking financial gain from the May 2024 accident.  (*Id.*).

McAllister further says that she was seen by independent doctors in February and June 2025, who both opined that she was unable to work and unable to perform household services.  (*Id.*).  Despite this, she says, her auto insurer Frankenmuth Insurance Company (FIC) continued to deny her benefits.  (*Id.*, PageID.4-5).

## B.     Procedural History

McAllister filed her complaint on June 30, 2025.  (ECF No. 1).  After summons were issued, FIC appeared in the case on July 9 and filed its motion to dismiss on July 16.  (ECF Nos. 8, 9).  Thereafter, the case was referred to the undersigned, and the docket reflects that CoreMed Plus, Dr. Ekkah, and Dr. Jarbo were served on July 1, with answers due July 22.  (ECF No. 17).  NP Brzak was served on July 15, with her answer due on August 5.  (ECF No. 16).  Dr. Mansoor has never been served.

CoreMed Plus, Dr. Ekkah, and Dr. Jarbo failed to meet their deadlines to respond, and Clerk's Entries of Default were entered against them on July 24, 2025.  (ECF Nos. 19, 21, 23).  The entries of default were later set aside, and the undersigned recommended that McAllister's motion for default judgment against these defendants be denied.  (ECF Nos. 68, 69).  The district judge adopted this recommendation.  (ECF No. 72).

Thereafter, on December 23, 2025, CoreMed Defendants filed the instant motion to dismiss.  (ECF No. 70).  McAllister was initially directed to file a response by January 22, 2026.  (ECF No. 71).  However, on February 10, 2026, McAllister filed a notice of change of address (ECF No. 75) as well as a notice indicating she had not received documents filed in her case (ECF No. 76).  Although well-past the response deadline, the undersigned entered an order extending the time for McAllister to file a response to CoreMed Defendants' motion to March 17, 2026 and directed them to file a proof of service of their motion on McAllister at her current address.  (ECF No. 77).  On March 17, 2026, McAllister filed a response (ECF No. 80) and CoreMed Defendants filed a reply (ECF No. 82).

### C.    McAllister's Other Lawsuits[4]

As set forth in detail in CoreMed Defendants' motion, this is not the first *pro se* case McAllister has filed regarding the auto accident.

On March 18, 2025, three months prior to filing the instant case, McAllister filed a small claims complaint in state court against Brzak based on the same operative facts that form the basis of this case, *i.e.* the auto accident.  Brzak timely

---

[4] Although information in this section is outside the pleadings, it is a matter of public record and included because it is relevant to the undersigned's recommendation to impose pre-filing restrictions on McAllister.  None of this information is considered in the undersigned's recommendation on the pending motion to dismiss.

removed the case to the general civil division of the district court.  On April 9, 2025, McAllister filed an amended complaint in the district court, adding three additional claims for General Negligence, Promissory Estoppel, and Fraud. *McAllister v. Brzak*, 2025-25001398R (52-3 District Court).  Brzak filed a motion for summary disposition.  On May 22, 2025, the state district court granted the motion, holding that there was no genuine issue of material fact that McAllister's claims for Breach of Contract, Promissory Estoppel, and Fraud lacked any legal support, and that Plaintiff's general negligence claims properly sounded in medical malpractice.  McAllister has appealed the dismissal to Oakland County Circuit Court.

Meanwhile, on May 13, 2025, McAllister filed another case, this time in Oakland County Circuit Court, raising the same claims which she asserted in her state district court complaint, but adding additional defendants:  Imad Mansoor, M.D., Maan Ekkah, M.D., Merna Jarbo, D.O., and Maan Ekkah, M.D., P.C. *McAllister v. Brzak, et al.*, 2025-214848 (Oakland Co. Cir. Ct.).  Defendants filed a motion for summary disposition.  Meanwhile, due to what CoreMed Defendants say were discovery abuses by McAllister, defendants sought an emergency protective order from Circuit Court, which was granted on June 26, 2025. According to the docket sheet CoreMed Defendants attached to their motion, since June 1, 2025, McAllister has filed a total of eleven (11) motions in the Oakland

County Circuit Court case, all of which have been summarily denied.  McAllister

is also seeking an interlocutory appeal of the Oakland County Court's protective

order in the Michigan Court of Appeals.

CoreMed Defendants also say that McAllister has filed another lawsuit in

Oakland County Circuit Court, against defense counsel based on their

representation of CoreMed Defendants in these cases.  *See* Oakland County Circuit

Court Case No. 2025-215949-NO.

In addition to these state court cases,[5] and the instant federal case,

McAllister has at least one other case in this district arising out of the auto

accident, which is mentioned below.[6]  *McAllister v. Long, et al.*, 25-cv-10391 (E.D.

Mich.).  In that case, McAllister sued USAA Casualty Insurance Company and its

agents who issued her insurance policy seeking PIP benefits from the auto

---

[5] Also attached to CoreMed Defendants' motion is a register of actions from
Oakland County Circuit Court, which shows that McAllister has filed multiple
cases in that court since 2013.  According to CoreMed Defendants, she has filed at
least thirty-six lawsuits in that court since 2013, eighteen of them since 2023.
Although the list does not include detailed case information, it does show that
McAllister has been a prolific *pro se* filer in state court.

[6] A review of the Court's CM/ECF filing systems shows that McAllister has filed
several other *pro se* cases in this district, which do not appear to be related to the
auto accident.  *See McAllister v. Experian*, 13-cv-14609, *McAllister v. Cunnigham,
et al.*,14-cv-14188, *McAllister v. Early Warning Sys.*, 15-11128, *McAllister v.
Bridgecrest Credit Co.*, 23-cv-10581, *McAllister v. Pulte Family Foundation et al.*,
24-cv-10883, *McAllister v. InTouch Credit Union et al.*, 23-cv-13243, and
*McAllister v. LexisNexis Risk Solutions, Inc.*, 25-cv-11732.  All of these cases are
closed.

accident.  The parties mediated that case with Hon. Victoria Roberts (Ret) at JAMS and reached a settlement.  McAllister later refused to sign the settlement agreement, requiring defendants to file a motion to enforce the agreement.  *See* ECF No. 25 in Case No. 25-cv-10391.  The parties later filed a stipulated order of dismissal.

### III.    Legal Standards

#### A.    Rule 12(b)(1)

"Fed. R. Civ. P. 12(b)(1) provides for the dismissal of an action for lack of subject matter jurisdiction." *Cartwright v. Garner*, 751 F.3d. 752, 759 (6th Cir. 2014).  "A Rule 12(b)(1) motion for lack of subject matter jurisdiction can challenge the sufficiency of the pleading itself (facial attack) or the factual existence of subject matter jurisdiction (factual attack)." *Id.*  "A facial attack goes to the question of whether the plaintiff has alleged a basis for subject matter jurisdiction, and the court takes the allegations of the complaint as true for purposes of Rule 12(b)(1) analysis." *Id.*  Here, CoreMed Defendants have made facial attacks on some of the statutes McAllister relies on for her claims.

#### B.    Rule 12(b)(6)

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605,

608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action"). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Furthermore, the Court holds *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, even in pleadings drafted by *pro se* parties, "'courts should not have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-977 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)). Moreover, "courts may not rewrite a complaint to include claims that were never presented . . . nor may courts construct the Plaintiff's legal

10

arguments for him. . . . [N]either may the Court 'conjure up unpled allegations[.]'" *Rogers v. Detroit Police Dep't*, 595 F. Supp. 2d 757, 766 (E.D. Mich. 2009).

IV.   Discussion

McAllister has sued defendants for violations of 28 U.S.C. § 4101, 42 U.S.C. § 1981, HIPAA, and the 21st Century Cures Act.  In their motion to dismiss, CoreMed Defendants rely upon and incorporate the arguments that FIC and Brzak argued in their motions to dismiss,amely that McAllister has failed to state a claim under 42 U.S.C. § 1981, and the other statutes relied upon do not create private causes of action.  As the undersigned has recommended that FIC and Brzak's motions to dismiss be granted for these reasons, what follows is essentially a repetition of the undersigned's report and recommendation on FIC and Brzak's motion.

A.   28 U.S.C. § 4101

McAllister attempts to bring a federal claim for defamation under 28 U.S.C. § 4101.  (ECF No. 1, PageID.5-6).  She says that CoreMed Defendants made false assertions to her and her insurers that her medical evaluations were not "aligned with [her] financial interest" and that she was attempting to "financially gain" from her car accident.  (*Id.*).

As the undersigned previously noted, 28 U.S.C. § 4101 "pertains to the

11

recognition of foreign judgments for defamation in United States courts" and several courts have held that this statute does not create a standalone cause of action. *White v. Am. Educ. Servs.*, No. 2:21-CV-10349, 2021 WL 6340986, at *7 (E.D. Mich. Dec. 22, 2021), *report and recommendation adopted*, 2022 WL 94896 (E.D. Mich. Jan. 10, 2022); *see also Rovetto v. Dublirer*, No. 20CV2497JMVMF, 2020 WL 7022667, at *9 (D.N.J. Nov. 30, 2020) (citing *Kaul v. Christie*, No. 16-2364, 2017 WL 2953680, *20 (D.N.J. June 30, 2017)); *Johnson v. Aspirus Corp.*, No. 2:18-CV-213, 2019 WL 3043032, at *3 (W.D. Mich. Feb. 20, 2019), *report and recommendation adopted*, 2019 WL 2240291 (W.D. Mich. May 24, 2019) ("[D]efamation is a state law claim."). Indeed, McAllister has already been informed in another lawsuit that this is the case. *See McAllister v. Long*, No. 25-CV-10391, 2025 WL 595156, at *2 (E.D. Mich. Feb. 24, 2025) ("28 U.S.C. § 4101, which applies to foreign judgments, has no applicability here."). Therefore, this claim should be dismissed under Rule 12(b)(1).

McAllister does not appear to allege state law defamation. To the extent that she could, the undersigned would recommend that the Court decline to exercise supplemental jurisdiction over the state law claim. *See Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1255-57 (6th Cir. 1996) (noting that only "unusual circumstances" would warrant supplemental jurisdiction over state law claim where all federal claims have been dismissed).

B.      42 U.S.C. § 1981

McAllister also sues defendants for civil rights violations under 42 U.S.C. § 1981.  (ECF No. 1, PageID.6-7).  "Section 1981 prohibits intentional race discrimination in the making and enforcing of contracts with both public and private actors."  *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 867-868 (6th Cir. 2001).  To state a claim under § 1981, a plaintiff must plead that (1) "[s]he belongs to an identifiable class of persons who are subject to discrimination based on their race"; that (2) "the defendant intended to discriminate against [her] on the basis of race"; and that (3) "the defendant's discriminatory conduct abridged" her rights under the statute.  *Amini v. Oberlin Coll.*, 440 F.3d 350, 358 (6th Cir. 2006).  McAllister says that defendants breached their contract with her and failed to provide the standard of care to her based on her African American and Cuban American status.  (*Id.*).

McAllister's § 1981 claim fails at prong two because although she is allegedly a member of a protected class, she has failed to plead racial animus on the part of any defendant.  *See Harris v. Wells Fargo Bank, N.A.*, No. 18-2400-JPM-dkv, 2019 WL 3080764, at *9 (W.D. Tenn. Mar. 18, 2019) (noting that to sustain a § 1981 or § 1982 claim, "one must allege intentional racial discrimination.").  Furthermore, prong three requires that McAllister allege "discrimination concerning one or more of the activities enumerated in the statute,

13

which includes the right to make and enforce contracts." *Brown v. Philip Morris Inc.*, 250 F.3d 789, 797 (3d Cir. 2001).  McAllister says that she had a contract with CoreMed Defendants that was breached, but as evidenced by Exhibit 1 of McAllister's complaint (ECF No. 1, PageID.11), the contract is nothing more than the financial responsibility agreement she signed as a patient when she began treating with CoreMed Plus.  It is not a contract to provide any specific services or provide any specific information to any insurer related to the care provided.

Because McAllister has not pled two of the three elements required to sustain a § 1981 claim, her claim should be dismissed under Rule 12(b)(6).

### C.     HIPAA and the 21st Century Cures Act

Finally, McAllister claims violations of HIPAA and the 21st Century Cures Act for CoreMed Defendants' refusal to give her access to her medical records. (ECF No. 1, PageID.8).  It is well-settled that there is no private cause of action premised on a violation of HIPAA.  The Sixth Circuit Court of Appeals has said that if an individual plaintiff believes her HIPAA rights were violated, "the proper avenue for redress is to file a complaint with the [Department of Health and Human Services]." *Thomas v. Univ. of Tennessee Health Sci. Ctr. at Memphis*, No. 17-5708, 2017 WL 9672523, at *2 (6th Cir. Dec. 6, 2017) (ruling that the district court did not err in dismissing claims under HIPAA where no private right of action existed, citing cases from other Circuit Courts).

14

Likewise, the 21st Century Cures Act does not create a private right of action for McAllister, nor can it provide federal subject matter jurisdiction to this Court.  Enacted in 2016, the 21st Century Cures Act was designed to foster safe and open "access, exchange, and use of electronic health information (EHI)."  21st Century Cures Act: Interoperability, Information Blocking, and the ONC Health IT Certification Program, 85 Fed. Reg. 25642, 25643 (2020).  The Act's purpose is to protect individuals and entities from "information blocking," or unnecessary obstacles to records access from the companies that electronically store the records.  *Id.*  "Information blocking" constitutes any acts which likely "interfere with access, exchange, or use of electronic health information," to include "practices that restrict authorized access" to records necessary "for treatment and other permitted purposes."  42 U.S.C. § 300jj-52.

The few courts to examine the issue have inferred that there is no private right of action under the 21st Century Cures Act.  *See Real Time Med. Sys., Inc. v. PointClickCare Techs., Inc.*, 131 F.4th 205, 227 (4th Cir. 2025); *Intus Care, Inc. v. RTZ Assocs., Inc.*, No. 24-CV-01132-JST, 2024 WL 2868519, at *2 (N.D. Cal. June 5, 2024).  Upon the undersigned's independent examination, the Act does not appear to create a private right of action.  And "[Supreme Court] precedents establish that a private right of action under federal law is not created by mere implication, but must be 'unambiguously conferred[.]'"  *Armstrong v. Exceptional*

15

*Child Ctr., Inc.*, 575 U.S. 320, 332 (2015) (citation omitted).  Therefore, McAllister's third and final claim under HIPAA and the 21st Century Cures Act also should be dismissed under Rule 12(b)(1).

### D.  McAllister's Response

As noted in CoreMed Defendants' reply, McAllister's response to their motion does cite any legal authority for her position and appears solely focused on Brzak, who the undersigned has already recommended be dismissed.  Nothing in McAllister's response indicates that any of the claims plead in this case should survive dismissal.

### V.  Attorney Fees and Costs

CoreMed Defendants requests attorney fees and costs in the amount of $10,620, representing 35.4 hours of work by counsel in this case, noting that McAllister has filed similar cases in state court.

Attorney fees and costs may be awarded to the prevailing party if the losing side has engaged in sanctionable litigation misconduct.  *See, e.g.*, *Wesco Ins. Co. v. Roderick Linton Belfance, LLP*, 39 F.4th 326, 337 (6th Cir. 2022).  But the Court has broad discretion in determining whether to grant such a sanction.  *Anderson v. Ostrander*, No. CIV. 01-71466, 2002 WL 169228, at *1 (E.D. Mich. Jan. 10, 2002).  Even unreasonable conduct with the intention to harass does not mandate an award of attorney fees and costs.  *Id.*

16

In this case, considering that McAllister is proceeding *pro se*, the undersigned recommends that each party bear its own costs, as was recommended in connection with FIC and Brzak's motions to dismiss, which the district judge adopted.

However, it is recommended that the district judge consider imposing filing restrictions on McAllister, as discussed in the next section.

## VI.    Prefiling Restrictions

Given McAllister's documented history of filing multiple lawsuits regarding the auto accident, the undersigned recommends that the district judge consider imposing prefiling restrictions on McAllister.  Under the Court's Local Rules: "A district judge may enjoin a litigant from filing actions without first obtaining leave of court if the judge finds that the litigant has engaged in a pattern of filing repetitive, frivolous, or vexatious cases."  E.D. Mich. LR 5.2.  "There is nothing unusual about imposing prefiling restrictions in matters with a history of repetitive or vexatious litigation."  *Feathers v. Chevron U.S.A., Inc.*, 141 F.3d 264, 269 (6th Cir. 1998).  The Court may enter an order that "restrains not only an individual litigant from repeatedly filing an identical complaint, but that places limits on a reasonably defined category of litigation because of a recognized pattern of repetitive, frivolous, or vexatious cases within that category."  *Id.*

17

As noted in detail above, this is McAllister's second case in this district stemming from her auto accident and she has pursued similar claims in state court, which shows a pattern of repetitive litigation.  Each case has required the expenditure of attorney and judicial resources.  Given McAllister's litigation history, it is unlikely she will be deterred from filing additional cases arising out of the same set of circumstances.  Therefore, the undersigned recommends that the district judge impose a prefiling restriction on McAllister preventing her from filing any new case in this district relating to the facts and circumstances surrounding the auto accident without leave of court.

## VII.   Conclusion

For the reasons stated above, the undersigned RECOMMENDS that CoreMed Defendants' motion to dismiss (ECF No. 70) be GRANTED.  The undersigned also RECOMMENDS that each party bear its own costs. Furthermore, the undersigned RECOMMENDS that the district judge impose a prefiling restriction on McAllister, preventing her from filing a new case in this district relating to the facts and circumstances surrounding the auto accident without leave of court.  Finally, the undersigned RECOMMENDS that World Insurance Associates LLC (WLA) be DISMISSED *SUA SPONTE*.

Dated: April 10, 2026                                       s/Kimberly G. Altman
Detroit, Michigan                                           KIMBERLY G. ALTMAN
                                                            United States Magistrate Judge

# NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation.  Any objections must be filed within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Under Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections,

19

in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," etc.  If the court determines that any objections are without

merit, it may rule without awaiting the response.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 10, 2026.

s/Dru Jennings
DRU JENNINGS
Case Manager

20